## OSBORN v. CONE.
### No. 15169.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 27, 1950.

Rehearing Denied Nov. 17, 1950.

Charles C. Wells, of Dallas, for appellant. Hardy & Clapp, of Tyler, for appellee.

McDONALD, Chief Justice.

On February 25, 1948, appellant Osborn executed a deed which purported to convey to appellee Cone an undivided mineral royalty interest in an eighty-acre tract of land located in Sabine Parish, Louisiana. The deed contained the following provision: "The consideration for this sale and transfer is the obligation of the purchaser to deliver to the said S. D. Osborn within

ninety (90) days from date hereof either one new 1948 Desoto Coupe automobile, or one new 1948 DeSoto Sedan automobile at the option of the said S. D. Osborn; it is being understood that the retail value of the automobile to be delivered as the purchase price hereof is Twenty-seven Hundred and no/100 ($2700.00) Dollars."

Appellant brought the present suit, alleging that appellee had accepted the aforesaid contract by reading it over and stating that it represented the contract between the parties, and by filing it for record in Sabine Parish, that appellee had retained the original or a true copy in his possession, that appellee had failed to perform his obligation under the contract, and that because of appellee's failure to perform his obligation appellant had been damaged in the sum of $2700. The prayer of appellant's petition was for judgment in the sum of $2700, plus interest from May 25, 1948, or in the alternative, for judgment for specific performance of the obligation to deliver to appellant an automobile of the kind described in the contract, and for general relief.

Appellee's answer consisted of a general denial, and of specific allegations that he had never entered into any contract or agreement with appellant under the terms of which he was obligated to deliver to appellant an automobile of the kind described in the contract.

At the conclusion of a non-jury trial the court rendered judgment denying appellant a recovery, and adjudging that the aforesaid deed be cancelled. It appears from the findings of fact and conclusions of law filed by the court that judgment was rendered on findings that there was no consideration for the deed, that the deed was never delivered to appellee, and that the contract to deliver the automobile was invalid because of the Statute of Frauds.

■ The deed, if otherwise valid, was supported by sufficient consideration. Under elemental principles of contract law, the obligation of appellee to deliver the automobile was a sufficient consideration for the deed, and the conveyance of royalty was a sufficient consideration for the promise to deliver the automobile. It is immaterial that no money was paid by one party to the other at the time the deed was executed. It would be a strange principle of law that would permit appellee to base a claim of failure or want of consideration on his own refusal to perform his promise.

■ The finding of the court that the deed was not delivered is at least against the overwhelming preponderance of the evidence, if not against the undisputed evidence. It was shown by the evidence that the practice in Louisiana was for the original deed to be filed with the recorder of deeds and left permanently in his office. The Louisiana attorney who prepared the deed testified, saying that it was customary for the notary to file the deed, and for a certified copy to be furnished to a party who desired a copy. It is undisputed that appellee received a certified copy of the deed and retained it in his possession. He was asked if a deed to the property in question had ever been delivered to him, and answered, "No, not the original deed." He said that he was shown a carbon copy of the deed, but that he did not record a carbon copy. Appellant had theretofore introduced in evidence a certified copy of the deed. This copy was exhibited to appellee and he was asked, "I will ask you to examine this instrument which the plaintiff has introduced in evidence and tell me if that is a copy of the deed that you were given?" and answered, "Yes; that was." He said that he recalled being in the office of Mr. Pickett, the Louisiana attorney, when the deed was drawn, and testified as to conversations among the parties and the attorney. Appellee said that he told appellant and the attorney that he did not want to be bound if he could not deliver the automobile, and being asked what appellant said, replied, "He said that would be all right; and I said you can have your royalty back and he said, 'All right, that is the understanding,' and he knows that is true." He was asked if he had not had the certified copy "ever since it was returned to you by Mr. Pickett?" and answered, "I do not deny it."

In response to a question he said he received the copy from the office of the Louisiana attorney, and then was asked, "And you accepted it?" and replied, "Sure, I accepted it." In another portion of his testimony he said that the copy was sent to him by the recorder of Sabine Parish, Louisiana, the parish in which the land was located.

Appellee placed two of his employees on the stand. One of them was his book-keeper, who testified that she heard appellant and appellee discussing the terms of the trade in appellee's office. The following statement from her testimony reflects her version of the agreement. "Well, within the ninety day period if this royalty developed and proved profitable, he was to deliver him a car, but if it did not he was to give the royalty back to him and it would not be any good then." She also said that she heard appellant agree in effect that if appellee did not deliver the automobile and if the property did not pay out "there was no deal." The testimony of the other employee was so vague that it is not worth mentioning.

█ The record as a whole, including appellee's brief, strongly suggests that both appellee and the trial court proceeded on the theory that delivery of the deed was not shown because there was no testimony that the original deed was manually handed to appellee. Neither in the trial court nor in this court have the parties made any effort to show whether the law with respect to delivery of a deed is different in Louisiana from what it is in Texas. We have read with interest the opinion in Chapman v. Kellogg, Tex.Com. App., 252 S.W. 151. It was there pointed out that it was customary before the common law was adopted in Texas for a conveyance to be retained in the archives of the notary, and for a certified copy to be given to the purchaser. As we read the opinion, it declared that delivery of the deed was not required by the civil law, and that an acceptance was shown where the deed had been filed as just mentioned. But even under present Texas law, we

think that the evidence shows overwhelmingly, if not conclusively, that appellee accepted the deed, and that a technical delivery of it was made to him. Under our present law, assuming for the purposes of this opinion that the Louisiana law is the same, delivery is necessary, but the law prescribes no particular form of words or action as constituting delivery, and there does not always have to be a manual delivery of the instrument to the grantee or his agent. 14 Tex. Jur. 818 et seq. The manner of doing the act is unimportant, provided the facts and circumstances show that it was the manifest intention of the grantor to deliver and that of the grantee to accept the deed. Any act or declaration, denoting such intentions on the part of the respective parties, is sufficient.

Mr. Pickett, the Louisiana attorney who prepared the deed, testified in the case, and when we consider his testimony, along with that of appellee concerning the receipt and retention of the certified copy and his declaration that he accepted the copy, it is difficult to see how it could reasonably be found that there was no delivery of the deed.

█ The finding that appellant's suit was barred by the Statute of Frauds was erroneous for two reasons. First, the Statute of Frauds was not pleaded as a defense. Rule 94, Texas Rules of Civil Procedure; 20 Tex. Jur. 352. Second, this was not a suit to enforce a contract for the sale of land, but a suit to recover purchase price set out in the deed. To quote from 20 Tex. Jur. 322: "After the delivery and acceptance of a conveyance in fulfillment of an agreement for the transfer of land, the statute of frauds has no application to the oral promise or promises of the transferee and the purchase money may be collected notwithstanding the absence of a promise in writing."

Since the judgment of the trial court was based on findings not warranted by the evidence, it must be reversed.

Reversed and remanded.